No. 92-593

IN THE SUPREME COURT OF THE STATE OF MONTANA

1994

STATE OF MONTANA,

      Plaintiff and Respondent,

v.

GERALD THOMAS DAVIDSON,

      Defendant and Appellant.

**FILED**

SEP 1 4 1994

*Ed Smith*
CLERK OF SUPREME COURT
STATE OF MONTANA

APPEAL FROM: District Court of the Thirteenth Judicial District,
In and for the County of Yellowstone,
The Honorable Robert W. Holmstrom, Judge presiding.

COUNSEL OF RECORD:

      For Appellant:

            Arnold A. Berger, Berger Law Firm,
            Billings, Montana

      For Respondent:

            Hon. Joseph P. Mazurek, Attorney General,
            Elizabeth L. Griffing, Assistant Attorney
            General, Helena, Montana

            Dennis Paxinos, Yellowstone County Attorney,
            Billings, Montana

Submitted on Briefs: August 4, 1994

Decided: September 14, 1994

Filed:

_____
Clerk

Justice Terry N. Trieweiler delivered the opinion of the Court.

Defendant Gerald Davidson was charged by information filed in the District Court of the Thirteenth Judicial District in Yellowstone County with deliberate homicide in violation of § 45-5-102, MCA. During pretrial proceedings, Davidson filed a notice of intent to rely on the defense of mental disease or defect. Therefore, pursuant to § 46-15-323, MCA, the District Court ordered Davidson to provide the State with copies of reports from those witnesses who would be called in support of that defense. Davidson refused to exchange the reports and was precluded by order of the District Court from offering evidence of mental disease or defect. Following a trial by jury, Davidson was convicted of deliberate homicide. He appeals the District Court's order excluding evidence of mental disease or defect. We affirm the District Court.

The issue on appeal is:

Do Montana's reciprocal discovery statutes, specifically, §§ 46-15-323, -328, and -329, MCA (1991), violate the Fifth, Sixth, and Fourteenth Amendments of the Federal Constitution and Article II, Section 25, of the Montana Constitution?

### FACTUAL BACKGROUND

Defendant Gerald Davidson was involved in a sometimes turbulent relationship with Pamela Moberly, a 20-year-old Billings woman. Following an argument, and Pamela's attempt to leave the relationship, he strangled Pamela and shot her at least two times in the head.

2

On September 11, 1990, the State filed its information charging Davidson with deliberate homicide.

On October 12, 1990, Davidson moved for a psychiatric evaluation. The District Court granted the motion on October 26, 1990, and an examination was ordered by Dr. Donald Harr. Dr. Harr was directed to submit a report to the District Court in triplicate, including the elements set forth in § 46-14-203, MCA (1989). After several delays, Dr. Harr filed his report with the District Court on January 23, 1991.

Davidson was later examined by three additional psychiatrists or psychologists. On October 15, 1991, Davidson gave notice under § 46-14-201, MCA (1989) (now § 46-15-323(3) in relevant part), of his intention to rely on mental disease or defect as a defense. The notice did not specify the names and addresses of the persons he intended to call as witnesses at the trial to support his defense as required by § 46-14-201 MCA (1989) (now § 46-15-323(4) in relevant part). On October 24, 1991, the State moved for disclosure of the names, addresses, and any statements or reports that are required to be disclosed under § 46-15-323, MCA (1991).

At an omnibus hearing on October 25, 1991, defense counsel advised the District Court that he would not provide the information requested by the State's motion. Defense counsel stated that he believed disclosing the documents, written reports, and medical examiners' statements could not be done without disclosing privileged or incriminating information. Recognizing Davidson's concern that some of the information contained in the

3

witness reports may be privileged or incriminating, the District Court ordered Davidson to avail himself of provisions in § 46-15-328, MCA, regarding any information that was non-discoverable because of privilege or otherwise. The District Court alerted counsel to the fact that § 46-15-328, MCA, provides for protective orders and for excising any information that may incriminate the defendant, or is cloaked with a privilege. Davidson still refused to submit the reports. After this issue was submitted on briefs, the District Court ordered Davidson to turn the reports over to the State.

After failing to comply with the District Court's order, Davidson sought a writ of supervisory control from this Court. Davidson's petition argued that the District Court's disclosure order violated the due process clause of the Fourteenth Amendment to the United States Constitution. On January 7, 1992, this Court upheld the District Court's order, with a slight modification that limited the order to persons who would be called as witnesses at trial. Davidson still refused to comply with the discovery order.

On March 13, 1992, the State moved in limine to preclude evidence at trial from Davidson in support of the defense of mental disease or defect. On April 3, 1992, at oral argument regarding the State's motion in limine, defense counsel advised the District Court that it should grant the State's motion. Counsel stated that he felt the statutes requiring disclosure were unconstitutional, and therefore, would not provide the requested information. Davidson was personally advised by the District Court that his

4

counsel's actions would deprive him of a possible defense at trial. Davidson conferred with his attorney and agreed that he understood that non-disclosure would eliminate his right to rely on mental disease or defect as a defense at trial. Accordingly, on April 7, 1992, the District Court granted the State's motion in limine and precluded Davidson from offering evidence in support of the defense of mental disease or defect.

Davidson was ultimately tried by a jury and convicted of deliberate homicide. On September 16, 1992, Davidson filed his notice of appeal.

## DISCUSSION

Do Montana's reciprocal discovery statutes, specifically, §§ 46-15-323, -328, and -329, MCA (1991), violate the Fifth, Sixth, and Fourteenth Amendments of the Federal Constitution and Article II, Section 25, of the Montana Constitution?

When we consider whether a statute is constitutional, there is a strong presumption in favor of the statute's validity. The party challenging a statute's constitutionality has the burden of proving it unconstitutional. *State ex rel. Dreher v. Fuller* (1993), 257 Mont. 445, 448, 849 P.2d 1045, 1047. In determining whether the District Court properly imposed sanctions by precluding Davidson from producing evidence of mental disease or defect, this Court considers whether the District Court clearly abused its discretion. The statutory scheme provides that the district court "may" disallow testimony, hence it is a matter left to the district court's discretion. Absent a clear abuse of discretion, the

5

district court's decision must be upheld. *State v. Waters* (1987), 228 Mont. 490, 495, 743 P.2d 617, 621.

We note at the outset that Davidson raised nearly the exact same issues in his initial petition for writ of supervisory control that he now raises on appeal. This Court, on January 7, 1992, accepted supervisory control and, with slight modification, upheld the District Court's disclosure order. Thus, the issue was substantively decided and Davidson could be precluded from relitigating this issue. *See State v. Zimmerman* (1977), 175 Mont. 179, 185, 573 P.2d 174, 177-78. However, since our prior decision was issued in summary fashion, we now further discuss the issues raised by Davidson's appeal.

Davidson asserts that §§ 46-15-323(3), (4), and (6), and -329, MCA (1991), violate the Fifth, Sixth, and Fourteenth Amendments of the United States Constitution, and Article II, Section 25, of the Montana Constitution. The challenged portions of § 46-15-323, MCA (1991), state:

> (3) Within 10 days after receiving a report of the defendant's mental condition from a psychiatrist or psychologist or at a later time as the court may for good cause permit, the defendant shall provide the prosecutor with a written notice of the defendant's intention to introduce evidence at trial of the defense that due to a mental disease or defect, the defendant did not have a particular state of mind that is an essential element of the offense charged.
> (4) The notice must specify for each defense the names and addresses of the persons, other than the defendant, whom the defendant may call as witnesses in support of the defense, together with all written reports or statements made by them concerning the results of physical examinations, scientific tests, experiments, or comparisons, except that the defendant need not include

6

a privileged report or statement unless he intends to use the privileged report or statement, or the witness who made it, at trial.

. . . .

(6) Within 10 days after the omnibus hearing in district court or at a later time as the court may for good cause permit, the defendant shall make available to the prosecutor for testing, examination, or reproduction:

(a) the names, addresses, and statements of all persons, other than the defendant, whom the defendant may call as witnesses in the defense case-in-chief, together with their statements;

(b) the names and addresses of experts whom the defendant may call at trial, together with the results of their physical examinations, scientific tests, experiments, or comparisons, including all written reports and statements made by these experts in connection with the particular case; and

(c) all papers, documents, photographs, and other tangible objects that the defendant may use at trial.

Davidson did provide notice of his intent to introduce evidence of mental disease or defect as required by subsection (3), but did not comply with subsection (4) which requires a defendant to provide the names and addresses of the witnesses and their written reports or statements. Since he did not comply with the discovery requirements, the District Court imposed sanctions under § 46-15-329, MCA (1991). That section states that a district court may impose any sanction it finds just under the circumstances; among the options listed are precluding a party from calling a witness, offering evidence, or raising a defense that is not disclosed. Because Davidson did not provide the requisite items, the District Court granted the State's motion in limine which precluded him from offering evidence of mental disease or defect at trial.

7

This Court previously affirmed Montana's reciprocal discovery provisions against attack on the same constitutional grounds in *State ex rel. Carkulis v. District Court* (1987), 229 Mont. 265, 746 P.2d 604, *appeal dismissed*, *Carkulis v. Montana* (1988), 487 U.S. 1201, 108 S. Ct. 2839, 101 L. Ed. 2d 877. We likewise upheld Montana's discovery statutes in subsequent cases. *See State v. Miller* (1988), 231 Mont. 497, 757 P.2d 1275 (prohibiting defendant from offering testimony of a private investigator for impeachment because defendant failed to disclose the private investigator's report); *State v. Kills on Top* (1990), 241 Mont. 378, 787 P.2d 336 (holding that defendant could not claim error in part because he did not request the district court to review the witness reports in question which would allow the district court to review the statements and excise incriminating information).

In *Carkulis*, the defendant refused to disclose materials he was ordered to disclose. The district court held that based on his refusal to provide discovery, the evidence sought could not be introduced at trial. The defendant filed a petition for writ of supervisory control with this Court. Carkulis claimed that the reciprocal discovery statutes violated his rights against self-incrimination based on the Fifth Amendment, Article II, Section 25, of the Montana Constitution, and due process rights guaranteed by the Fourteenth Amendment. We concluded, relying in part on *State ex rel. Sikora v. District Court* (1969), 154 Mont. 241, 462 P.2d

897, that not all evidence obtained from a defendant is privileged under the Fifth Amendment.

In *Sikora*, this Court discussed the constitutionality of § 95-1803(d), RCM (1947), which was repealed but substantially incorporated into § 46-15-323, MCA (1991). *Sikora* dealt specifically with the prior discovery statutes in cases involving the defenses of insanity, self-defense, and alibi. We reasoned that giving notice of a defense does not incriminate a defendant because the Constitution does not protect a defendant from consequences of claiming a defense. Nor does the Constitution assure a defendant the right to defend in a manner that denies the State a chance to examine the truthfulness of a defendant's position. *Sikora*, 462 P.2d at 899. The purpose of reciprocal discovery provisions is to provide notice and prevent surprise. *Sikora*, 462 P.2d at 899. Citing previous cases, we recognized that a criminal trial is not considered a game of concealment, but rather a search for the truth. *Sikora*, 462 P.2d at 901.

The previous discovery statute, as discussed in *Sikora*, 462 P.2d at 902, did not infringe upon the privilege against self-incrimination because it "in no manner compels a defendant to give evidence other than that which he will voluntarily and without compulsion give at trial." A defendant's privilege is not abridged if the defendant chooses to remain silent or not call any witnesses regarding his or her sanity.

9

In *Carkulis*, we also relied on *Williams v. Florida* (1970), 399 U.S. 78, 90 S. Ct. 1893, 26 L. Ed. 2d 446, which upheld a Florida statute requiring the defense to disclose an alibi witness to the state before trial. The Court in *Williams* based its decision on the theory of "accelerated disclosure." It reasoned that because at the trial the defendant would have to reveal his alibi and witnesses; accelerating disclosure does not affect constitutional rights against self-incrimination. *Williams*, 399 U.S. at 85 (stating that the Fifth Amendment does not grant a defendant a constitutional right to wait until after the prosecution's case in chief before announcing the nature of his defense). Partly because without disclosure the prosecution may suffer from surprise, and partly because Montana's discovery statutes provide protections for defendants, such as protective orders found in § 46-15-328, MCA, the *Carkulis* Court held that a defendant must provide the State a list of all witnesses he intends to call at trial. *Carkulis*, 746 P.2d at 609.

Discussing the issue of whether or not a defendant must surrender copies of statements obtained by the defendant, and statements of witnesses the defendant would call at trial, we acknowledged in *Carkulis* that two states had refused to allow pretrial disclosure of witness lists or statements. *Carkulis*, 746 P.2d at 610 (citing *Scott v. State* (Alaska 1974), 519 P.2d 774; *In re Misener* (Cal. 1985), 698 P.2d 637.)

10

Davidson reasserts arguments relying on those cases. However, both of those cases were based on state constitutional law, not United States Supreme Court decisions. Thus, Alaska and California decided to interpret their constitutions more broadly than the U.S. Supreme Court had construed the Fifth Amendment in *Williams*. In those cases, the courts disallowed pretrial exchange of witness lists and witness statements because they felt it was testimonial and stated such information may tend to be incriminating in some cases. *Carkulis*, 746 P.2d at 610. However, as we did not find defendant's reliance on those cases persuasive in *Carkulis*, we do not find Davidson's reliance persuasive here. In fact, *Misener*, is no longer the law in California. *See Izazaga v. Superior Court* (Cal. 1991), 815 P.2d 304 (upholding the prosecution's motion to compel formal discovery in a rape and kidnapping case and recognizing California's discovery provisions as a two-way street).

In *Carkulis*, we noted that our analysis applied equally to pretrial disclosure of prospective expert witnesses. We were careful then, and we reiterate now, that district courts should exercise caution because examinations by experts require the defendant to communicate freely and candidly. As a result, an expert's notes or reports may contain possibly incriminating information to which the State is not entitled. *Carkulis*, 746 P.2d at 611 (citing *Malloy v. Hogan* (1964), 378 U.S. 1, 84 S. Ct. 1489, 12 L. Ed. 2d. 653. In *Carkulis*, 746 P.2d at 611, we were particularly

11

careful to mention that psychologists' and psychiatrists' reports may contain incriminating statements, which should, after *in camera* inspection, be excised from the material produced.

We reiterate the importance of Montana's protective order provisions in § 46-15-328, MCA. We do not hold that a criminal defendant is required to disclose an incriminating statement. In this case, however, Davidson was specifically advised of his right to avail himself of the statute's protective provisions and declined. Instead, he refused to provide any information.

Davidson personally agreed with this procedure after his counsel decided to challenge the constitutionality of Montana's statutes, despite counsel's knowledge of the *Carkulis* decision. Because Davidson did not attempt to utilize the protective order provisions, his claims must fail. *See Kills on Top*, 787 P.2d at 344 (stating that because defendant did not request a protective order, and the district court record did not contain evidence of prejudice, that defendant's argument was merely academic).

Davidson also relies on *Smith v. McCormick* (9th Cir. 1990), 914 F.2d 1153. In that case, the defendant requested the court to reconsider his previous guilty plea where he requested the death sentence, and requested a psychiatric evaluation. The court granted the evaluation on the condition that the results be provided to the court. At issue in *Smith* were questions of an indigent defendant's due process rights, and whether they were violated because psychiatric assistance was conditioned upon

12

disclosure. The court's discussion focused on whether or not the defendant was entitled to a competent psychologist or psychiatrist who could conduct appropriate exams and assist in preparing the defense without being required to disclose his or her opinion to the State or the court. It did not involve discovery rules which relate to witnesses a defendant intends to call at trial.

We are not here confronted with the same issue. First, *Smith* did not involve a challenge based on Fifth Amendment rights. Second, *Smith* did not involve a challenge to Montana's statutes that require disclosure of a psychiatric report after notice of mental disease or defect. Third, nothing here prevented Davidson from being examined by psychiatrists of his choice. In fact, the court appointed Dr. Harr to examine Davidson at his first request. Furthermore, Davidson was examined by several other psychiatrists and psychologists. Thus, Davidson was entitled to a neutral and independent psychiatrist to assist and evaluate whether or not the mental disease or defect claim was advisable.

Montana's reciprocal discovery provisions allow a defendant to be examined by as many psychiatrists as a defendant desires to prepare a defense. He or she must only disclose statements of those that are to be called as witnesses at trial. Defendants are allowed to communicate freely with a psychiatric expert and need disclose nothing unless the expert is to be called as a witness. *See United States v. Alvarez* (3d Cir. 1975), 519 F.2d 1036, 1046. Furthermore, even in *Smith*, 914 F.2d at 1160 (citing *United States v.*

13

*Nobles* (1975), 422 U.S. 225, 240, 95 S. Ct. 2160, 2171, 45 L. Ed. 2d. 141, 154-55, n. 15), the court recognized that the attorney-client privilege extends only to the "point of testimonial use of that communication." We hold that the discovery provisions found at § 46-15-323, MCA, do not violate the Fifth and Fourteenth Amendment's of the United States Constitution, or Article II, Section 25, of the Montana Constitution.

Davidson also argues that his Sixth Amendment rights were violated. Davidson fails to specify which of his Sixth Amendment rights, nonetheless, Sixth Amendment arguments were also litigated and decided in *Carkulis*. The United States Supreme Court has recognized in *Nobles*, 422 U.S. at 240-41, that the Sixth Amendment does not grant the right to assert half truths and is subject to legitimate demands of the adversarial system. Citing *Nobles*, in *Carkulis* we agreed that the Sixth Amendment does not confer the right to give testimony free from the demands of the adversarial system. *Carkulis*, 746 P.2d at 616. We also conclude that the discovery provisions found at § 46-15-323, MCA, do not violate the Sixth Amendment of the United States Constitution.

Davidson next challenges the constitutionality of § 46-15-329, MCA, which allows a district court to impose sanctions on a defendant who fails to comply with discovery requirements. Again, *Carkulis* is dispositive.

> Once it is determined, as we have determined here, that reciprocal pretrial disclosures subject to constitutional or statutory limitations are permissible,

14

> it goes hand in hand with that determination to say that the District Court may exercise its judicial discretion in enforcing such permissible disclosures.

*Carkulis*, 746 P.2d at 616. Likewise, in later opinions we recognized that § 46-15-329, MCA, is consistent with the goal of reciprocal discovery to "enhance the search for truth." *See Waters*, 743 P.2d at 620. As mentioned above, this Court defers to the district court's discretion regarding the imposition of sanctions. *Waters*, 743 P.2d at 621; *State v. Van Voast* (1991), 247 Mont. 194, 202, 805 P.2d 1380, 1385.

In this case, Davidson repeatedly refused to comply with orders by the District Court and from this Court requiring him to comply with the discovery provisions. Therefore, we conclude that in an effort to enforce the reciprocal discovery statutes, the District Court did not abuse its discretion by excluding evidence of mental disease or defect.

Accordingly, we affirm the District Court and hold that Montana's reciprocal discovery statutes for criminal proceedings, specifically §§ 46-15-323(3), (4), and (6), and -329, MCA, do not violate the Federal or Montana Constitutions.

_____
Justice

15

We concur:

_____
        Chief Justice

_____

_____

_____
        Justices

16

September 14, 1994

## CERTIFICATE OF SERVICE

I hereby certify that the following certified order was sent by United States mail, prepaid, to the following named:

Arnold A. Berger
Berger Law Firm, P.C.
P.O. Box 1914
Billings, MT 59103

Dennis Paxinos, County Attorney
Shelley Briney, Deputy
P.O. Box 35025
Billings, MT 59107

Hon. Joseph P. Mazurek, Attorney General
Elizabeth L. Griffing, Assistant
Justice Bldg.
Helena, MT 59620

ED SMITH
CLERK OF THE SUPREME COURT
STATE OF MONTANA

BY:_____
Deputy